# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-6977

JEFFREY K. LILE, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 11, 2024)                    Decided April 11, 2024)

*Melissa Hendricks*, with whom *Glenn Bergmann* and *Michal Leah Kanovsky* were on the brief, all of Rockville, Maryland, for the appellant.

*Jennifer K. Hamel*, with whom *Richard J. Hipolit*, Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Drew A. Silow*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before PIETSCH, ALLEN, and LAURER, *Judges*.

ALLEN, *Judge*: This case sits at the crossroads of veterans law and military law. Appellant Jeffery K. Lile seeks basic entitlement to VA benefits by proving his status as a veteran. What stands in appellant's way is a July 15, 2021, Board of Veterans' Appeals (Board) decision in which the Board found that (1) he has no creditable service upon which to warrant basic entitlement to VA benefits because the Army discharged him from service as a result of a voided enlistment based on fraud and (2) his voided service is equivalent to a dishonorable discharge.[1]

As we discuss, when appellant enlisted in the Army, he denied having been convicted of any crime and, in fact, disclaimed any involvement with civilian criminal courts and law enforcement.[2] But these representations proved untrue. During his service, the Federal Bureau of Investigation (FBI) informed Army officials that appellant had been convicted of two crimes.[3] Thereafter, the Army released appellant from its custody and control due to fraudulent entry.[4]

---

[1] Record (R.) at 5, 8, 11.

[2] R. at 375.

[3] R. at 436-37.

[4] R. at 248.

Appellant eventually applied for VA benefits, leading to the Board decision on appeal. The Board found that a "discharge for concealment of a conviction by [a] civil court which would have prevented enlistment will be held to be under dishonorable conditions, and therefore a bar to VA benefits."[5] The Board ultimately denied appellant's claim after finding that he had "no creditable service for VA benefits purposes."[6]

This panel was convened to address how appellant's voided enlistment affects his eligibility for Title 38 benefits. Neither our Court nor the United States Court of Appeals for the Federal Circuit has had occasion to explore that question in a precedential decision. This lack of judicial attention perhaps explains the defects we discuss below in the Board's assessment of appellant's eligibility for VA benefits. And it may also explain why the Secretary's defense of the Board's eligibility assessment bears no resemblance to the Board's reasoning.

To summarize what follows, we hold that, while VA is bound by a service department's act of voiding an enlistment as well as its determination of the dates of a person's entry and separation, VA must conduct an independent assessment of whether a claimant subject to a voided enlistment is eligible for VA benefits. Specifically, VA must determine benefits eligibility by applying 38 C.F.R. § 3.14, most significantly subsections (a) and (b). If VA determines that a claimant's voided enlistment falls under subsection (b), its work is done because such a claimant is categorically not eligible for benefits under the regulation. In contrast, if VA determines that a claimant's voided enlistment comes within the ambit of subsection (a), then VA must proceed to assess the character of the claimant's service (assuming the service department left the period of service subject to the void enlistment uncharacterized, as should be the norm in a voided enlistment) and whether it bars entitlement to benefits under the appropriate provisions of 38 C.F.R. § 3.12.[7]

It does not appear that the Board approached the question of appellant's eligibility using the correct legal framework. At a minimum, the Board's analysis is unclear, frustrating judicial review. So, we will set aside the Board decision on appeal and remand this matter for the Board to consider appellant's eligibility for benefits under the law as we have described.

---

[5] R. at 8 (citing 38 C.F.R. § 3.14(a)-(b) (2023)).

[6] R. at 6.

[7] *See* 38 U.S.C. § 5303; 38 C.F.R. § 3.12 (2023).

# I. BACKGROUND

A clear timeline of the procedural and factual history will help frame this matter. Appellant enlisted in the United States Army on September 24, 1979.[8] On his enlistment documents, appellant initialed under "no" in response to a question about whether he had "ever been arrested, charged, cited, (*including traffic violations*) or held by any law enforcement or juvenile authorities in the United States or in a foreign country regardless of whether the citation or charge was dropped or dismissed or you were found not guilty."[9] Appellant also answered "no" when asked, as "a result of being arrested, charged, cited, or held by law-enforcement or juvenile authorities, have you ever been convicted, fined, or forfeited bond . . .?"[10] He then handwrote "I claim no other involvement with the police."[11]

In November 1979, the FBI, after conducting a background check, reported to the Army that appellant had been convicted of two crimes before he enlisted, larceny and breaching the peace.[12] In January 1980, appellant received two letters of commendation from his command.[13] He maintains that he was initially recommended for retention.[14] Despite the letters of commendation, in March 1980, appellant's commander recommended him to be "eliminated from service" for fraudulent entry because, since February 1980, appellant had "not demonstrated a desire to remain in the Army. Through demonstrated poor attitude, lack of motivation, and self-discipline, [appellant] has succeeded in negating all previous high recommendations toward a

---

[8] R. at 248.

[9] R. at 375.

[10] *Id.*

[11] *Id.* Although appellant responded in the negative when asked about his criminal involvement before service, he maintains that he informed his Army recruiter about the two convictions and that the recruiter advised him that he didn't need to disclose them on his enlistment documents. *See* R. at 142, 256, 260.

[12] R. at 436, 437. The record also refers to the larceny conviction as "petty theft." R. at 256. No document specifies whether appellant's convictions were felonies or misdemeanors, and the Board did not make any findings on the matter. Appellant argues that the pre-enlistment convictions were indeed misdemeanors. *See generally* Appellant's Brief (Br.); R. at 44-45. And the record reflects misdemeanor-type sentences for both convictions. *See* R. 436 (FBI report detailing that appellant served 12 total days in jail for both convictions). The Secretary argues that the distinction between felony and misdemeanor is irrelevant because § 3.14 does not apply where there is no qualifying service listed on appellant's DD-214. *See* Secretary's Br. at 19. But the Secretary does not affirmatively challenge that the convictions at issue were treated as misdemeanors. We need not take a position on this factual matter at this point. As we discuss below, the Board will need to assess this question when it applies § 3.14 on remand.

[13] R. at 363-64, 448.

[14] R. at 23, 414.

possible retention in the Army."[15] The commander further stated that appellant's "performance has rapidly declined since originally recommended for retention in the [A]rmy."[16] The rest of appellant's command recommended elimination from service by voidance of the enlistment contract.[17]

On April 11, 1980, the Army released appellant from its custody and control due to fraudulent entry.[18] Appellant signed a statement acknowledging that the basis of the separation was for fraudulent entry and that he understood "that[ ] if I am being considered for separation for fraudulent entry, my enlistment may be voided under certain circumstances."[19] Appellant's DD-214 shows "00" for "net active service" for the period from September 1979 to April 1980 (as shown in the following excerpt of item 12 from the DD-214), and his character of discharge is "uncharacterized."[20]

| 12. RECORD OF SERVICE | YEAR (s) | MON (s) | DAY.(s) |
|---|---|---|---|
| a. Date Entered AD This Period | 79 | 09 | 24 |
| b. Separation Date This Period | 80 | 04 | 11 |
| c. Net Active Service This Period | 00 | 00 | 00 |
| d. Total Prior Active Service | 00 | 00 | 00 |
| e. Total Prior Inactive Service | 00 | 00 | 00 |
| f. Foreign Service | 00 | 00 | 00 |
| g. Sea Service | 00 | 00 | 00 |
| h. Effective Date of Pay Grade | 79 | 09 | 24 |
| i. Reserve Oblig. Term. Date | 00 | 00 | 00 |

In the years following his separation, appellant made multiple attempts to amend his discharge documents with the Department of the Army, specifically in July 1998, March 1993, January 1999, and October 2015, but none succeeded.[21] In June 2016, appellant filed a claim for VA benefits seeking service connection for depression/anxiety, bilateral hearing loss, and tinnitus.[22] In response, VA sent appellant a letter stating that his military service was not honorable, but that he could be eligible for benefits so long as his service was not "dishonorable."[23]

---

[15] R. at 438; *see* R. at 447-48.

[16] R. at 414.

[17] R. at 415.

[18] R. at 248.

[19] R. at 429.

[20] R. at 248.

[21] R. at 256, 267, 273, 274, 277, 449, 450.

[22] R. at 531-34.

[23] R. at 517-28.

In February 2017, the VA regional office (RO) found that appellant's service was not honorable.[24] It further found that under 38 C.F.R. § 3.14(b) "the evidence, including facts and circumstances, shows that [appellant's] enlistment has been voided by the service department, thus a statutory bar to benefits is established," but it assessed none of the facts leading to the void enlistment when rendering that finding.[25] In June 2017, appellant submitted a Notice of Disagreement with the February 2017 RO decision.[26]

Appellant perfected his agency appeal in February 2018 and explained that he admitted his convictions to the army recruiter, that he entered service quickly, and that when he was accused of fraudulent entry, he tried to fight it but "was getting depressed and suicidal from the time it took to get this settled[.]"[27]

In May 2021, appellant participated in a Board hearing in which he testified about his past convictions, that he was convicted of misdemeanors, that he informed his recruiter of his criminal history, and that he simply followed his recruiter's instructions when he did not list the convictions on his enlistment forms.[28] He also stated that he believed his service was honorable, that he received letters of commendation, but that once he was cited for fraudulent entry, he was only assigned the most miserable jobs.[29]

---

[24] We note that VA's confusion about appellant's character of discharge was pervasive. Despite the February 2017 RO finding that appellant's service was not honorable, in February 2018, the Phoenix, Arizona, RO provided appellant with a certificate for use in establishing civil service preference. That certificate stated that appellant served on active duty and was separated from the Army under honorable conditions. R. at 127-28. But on March 7, 2020, the Salt Lake City, Utah, RO sent separate letters (1) certifying that records "disclose that Jeffrey K. Lile served on active duty and was separated under honorable conditions from the Armed Forces," R. at 82-83, and (2) summarizing his VA benefits and stating that appellant's discharge from service was dishonorable for VA purposes. R. at 79-81. And on March 10, 2021, the Nashville, Tennessee, RO certified that records "disclose that Jeffrey K. Lile served on active duty and was separated under honorable conditions from the Armed Forces." R. at 68-69, 82-83. Not only has VA never explained these contrary findings, but VA's constant flip-flopping about whether appellant was separated from service under honorable conditions reveals a basic misunderstanding of the case and underscores VA's confusion about how to adjudicate void enlistment cases.

[25] R. at 234-44. The RO's reference to a "statutory bar" also indicates the Agency is confused about how to proceed in void enlistment cases because it fails to explain which statutory bar appellant has triggered and why it prevents his eligibility for benefits.

[26] R. at 222-23.

[27] R. at 142.

[28] R. at 44-45.

[29] R. at 47.

The Board issued the decision on appeal in July 2021.[30] The Board cited 38 C.F.R. §§ 3.12(k)(2) and 3.14(a)-(b) and reasoned that a "discharge for concealment of a conviction by [a] civil court which would have prevented enlistment will be held to be under dishonorable conditions, and therefore a bar to VA benefits."[31] It then found that, because appellant would have been prevented from enlisting if he had not fraudulently concealed the civil court convictions, the service is void and equivalent to a dishonorable discharge.[32] Ultimately, the Board denied benefits on the grounds that "appellant has no creditable service for VA benefits purposes" and could not attain veteran status for the purpose of establishing eligibility for VA benefits.[33] This appeal followed.

## II. ANALYSIS

The threshold matter in any VA benefits claim is the claimant's basic eligibility. Basic eligibility is determined by proving "veteran" status.[34] A claimant is a veteran if he or she served in the active military, naval, air, or space service, and was discharged or released from service under conditions other than dishonorable.[35] Whether a claimant meets veteran status is a finding of fact we review for clear error.[36] Of course, we review legal questions de novo.[37]

For all its findings on material issues of fact and law, the Board must support its determinations with an adequate statement of reasons or bases that enables the claimant to understand the precise basis of its decision and facilitates review in this Court.[38] To comply with this requirement, the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for its rejection of material

---

[30] R. at 5-14.

[31] R. at 6-8 (citing 38 C.F.R. § 3.14(a)-(b)).

[32] R. at 8.

[33] R. at 11.

[34] *Donnellan v. Shinseki*, 24 Vet.App. 167, 172 (2010).

[35] 38 U.S.C. § 101(2); 38 C.F.R. §§ 3.1(d) (2023), 3.12(a).

[36] 38 U.S.C. § 7261(a)(4); *see Hill v. McDonald*, 38 Vet.App. 243, 251 (2016) (citing *Struck v. Brown*, 9 Vet.App. 145, 152-53 (1996)).

[37] *Martinez v. Wilkie*, 31 Vet.App. 170, 175 (2019) (citing 38 U.S.C. § 7261(a)(1)); *see Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003).

[38] 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).

6

evidence favorable to the claimant.[39] The Board must also discuss all provisions of law and regulation that are made "potentially applicable through the assertions and issues raised in the record."[40]

### A. A service department finding voiding an enlistment is not an automatic bar to benefits.

As we noted earlier, there is scant caselaw addressing voided enlistments. Before proceeding to explain our holding about how VA is to assess such voided service, we first must consider an argument the Secretary advances that, were we to accept it, would resolve this appeal at the outset. Specifically, the Secretary argues that the Board correctly found that appellant was not a veteran and that he was ineligible for VA benefits because VA is bound by the "fundamental controlling fact that the service department has determined that [appellant] was not a veteran."[41] In other words, he maintains that when a service department voids an enlistment there is no work for the Agency to do; it simply must accept that a benefits-claimant whose enlistment is voided is categorically barred from receiving VA benefits.

The Secretary principally relies on the Court's decision in *Duro v. Derwinski*[42] to support his argument.[43] In *Duro*, the Court reviewed whether a purported member of the Philippine Commonwealth Army (PCA) or recognized guerilla unit (GU) was entitled to burial benefits from VA because such members were deemed to have been in the service of the U.S. Armed Forces.[44] The Court held that 38 C.F.R. § 3.203 (1991) required United States service department verification to establish service in the U.S. Armed Forces, and that "service department findings as to the fact of service in the U.S. Armed Forces are made binding upon VA for purposes of establishing entitlement to benefits."[45] Similarly, in *Soria v. Brown*, the Federal Circuit considered whether a Philippine national could use Philippine records to prove service in the U.S. Armed

---

[39] *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

[40] *Schafrath v. Derwinski*, 1 Vet.App. 589, 592 (1991); *see Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (requiring the Board to address all issues explicitly raised by the claimant or reasonably raised by the record), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009).

[41] Secretary's Br. at 10.

[42] 2 Vet.App. 530, 532 (1992).

[43] *See* Appellant's Br. at 9-12 (citing *Duro*, 2 Vet.App. at 532).

[44] *Duro*, 2 Vet.App. at 532.

[45] *Id.*; *see Tagupa v. McDonald*, 27 Vet.App. 95, 100 (2014).

Forces under § 3.203.[46] The Federal Circuit emphasized that where service department verification is required under § 3.203(c), "VA has long treated the service department's decision on such matters as conclusive and binding on VA."[47]

According to the Secretary, *Duro* (and *Soria*) resolve this appeal because, in the context of a voided enlistment, the service department's voidance decision conclusively establishes whether a claimant has a period of service that can establish eligibility for VA benefits.[48] The Secretary is wrong. To be clear (and as we discuss further below), we agree that certain service department findings concerning voided enlistments bind VA. For example, VA must accept the service department findings about whether an enlistment has been voided as well as the dates of entrance and voidance for a claimant.[49] These matters are the responsibility of the relevant service department.[50] But neither *Soria* nor *Duro* supports the Secretary's position that a service department finding voiding service conclusively bars eligibility for VA benefits. Both cases concern whether VA could accept documents other than an official service department record to verify actual service in the U.S. Armed Forces under § 3.203.[51] However, verifying actual U.S. military service is not at issue here. We know that appellant served in the U.S. Army—we know his entrance date, his discharge date, and the facts of his service. The question at issue here—unlike in *Soria* and *Duro*—is whether the time appellant indisputably spent in service makes him eligible to receive VA benefits. And as to that question, as we turn to next, there is a directly applicable regulation (38 C.F.R. § 3.14) that instructs VA about how it is to assess the impact of a voided enlistment. In short, *Duro* and *Soria* don't speak to the issue before us at all.[52]

---

[46] *Soria v. Brown*, 118 F.3d 747, 749 (Fed. Cir. 1997).

[47] *Id.*

[48] Secretary's Br. at 9-12.

[49] *See generally* 38 C.F.R. § 3.14. We discuss this regulation in detail below.

[50] *See* 10 U.S.C. § 1553; 32 C.F.R. §§ 70.4, 581.3 (2023).

[51] *See Soria*, 118 F.3d at 749; *Duro*, 2 Vet.App. at 532.

[52] We acknowledge that a non-precedential decision of the Court has applied *Soria* and *Duro* in the way the Secretary advocates. *See Mullen v. McDonough*, No. 20-5581, 2021 U.S. Vet. App. LEXIS 2101 (Nov. 30, 2021). We have carefully considered *Mullen*'s reasoning. However, we ultimately reach a different conclusion on the issue. As we explain in detail, VA has adopted a regulation that specifically describes how the Agency is to assess eligibility for benefits in the context of a voided enlistment. The existence of that regulation makes clear that the situation we face here (and that the Court addressed in *Mullen*) is starkly different from the one at issue in *Soria* and *Duro*.

Before leaving the Secretary's argument, we note two oddities. First, the Secretary's argument bears no resemblance to how the Board considered this matter. Indeed, the Board never even cited *Duro* or *Soria*. Our review is of Board decisions, not the Secretary's post-hoc rationalizations.[53] Nevertheless, we have addressed the argument on the merits because it involves a pure question of law about an issue that would be dispositive of the appeal were the Secretary correct.

The second issue is more substantive. The Secretary's argument contradicts VA General Counsel Precedential Opinion 16-1999.[54] That opinion states that the "net active service" entry on the DD Form 214 is understood by VA to be a service department personnel management tool for calculating eligibility for increased pay or retirement based upon longevity.[55] The VA General Counsel opinion further explains that "the fact that the [service department] did not credit the claimant with any time in service is not, in our view, controlling for purposes of section 101(2)."[56] The Secretary's departure from the General Counsel opinion stating that the DD-214 is not controlling for purposes of establishing "veteran status" under 38 U.S.C. § 101(2) is significant because VA's current position cuts against that basic principle. If the Agency's official position—as stated in G.C. Prec. 16-1999—is that VA (and not the service department) determines who is a veteran for VA benefits purposes, VA should also determine who is a veteran when it is unclear. Of course, we are not bound by the General Counsel's opinion.[57] But the opinion is important because it contradicts in practical terms the argument the Secretary's counsel advanced in this appeal and may affect the Board's analysis on remand. And, as we turn to now, the Precedent

---

[53] *See In re Lee*, 277 F.3d 1338, 1345-46 (Fed. Cir. 2002) ("'[C]ourts may not accept appellate counsel's *post hoc* rationalization for agency action.'" (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962))); *Simmons v. Wilkie*, 30 Vet.App. 267, 277 (2018), *aff'd*, 964 F.3d 1381 (Fed. Cir. 2020).

[54] VA Gen. Coun. Prec. 16-1999 (Dec. 15, 1999).

[55] *See id*.

[56] *Id.* at 3. Although VA's General Counsel wrote this opinion in the context of Air Force regulations, we see no reason why VA would treat the "net active service" entry on the DD Form 214 differently for other service departments. We know that the Army will always put a "zero" in block 12c of a DD-214 for the days served when it voids an enlistment. *See* Army Regulation (AR) 635-5, ch. 2-7(d)(2); AR 635-200, ch. 5-21; AR 635-200, ch. 14-4. So, if the Army always records zero active duty days in the same way as it appears the Air Force does, we see no reason not to treat the Army's notation as an analogous personnel management tool.

[57] *Walsh v. Wilkie*, 32 Vet.App. 300, 305 (2020). Although we are not bound by General Counsel's opinions, the Board is. *See* 38 U.S.C. § 7104(c). Yet, the Board did not discuss this opinion in its decision, an omission that further undermines the adequacy of the Board's reasons or bases. We address the inadequacies in the Board's reasoning in detail below.

Opinion tracks how we view the law in the context of voided enlistments employing our de novo review of that question.

B. *VA must assess void enlistments in terms of determining eligibility for title 38 benefits first under 38 C.F.R. § 3.14 and then, as appropriate, under 38 C.F.R. § 3.12.*

Now that we have rejected the Secretary's argument that VA must categorically deny a claimant's eligibility for VA benefits where a service department has voided the claimant's enlistment, we turn to how VA should approach that question. VA must conduct an independent assessment of the facts leading to the voided enlistment and whether they are a bar to benefits. When assessing those facts, the starting point is 38 C.F.R. § 3.14, a provision entitled "validity of enlistments."[58] Determining the meaning of § 3.14 is a question of law, and the Court reviews such regulatory construction questions de novo.[59] If the regulation's meaning is clear from its language, that is "the end of the matter."[60] Without ambiguity, "[t]he regulation then just means what it means—and the court must give it effect."[61]

We conclude that § 3.14 is unambiguous. The regulation opens with the sentence, "service is valid unless enlistment is voided by the service department."[62] If the regulation ended there, then entitlement to benefits would turn on whether there was a period of service invalidated by a void enlistment, and VA would be bound by that service department finding to establish eligibility for VA benefits. But the key is that the regulation does not end with that single sentence. Instead, subsections (a)-(d) carve out scenarios in which service can be valid for VA benefits purposes despite a service department voiding a claimant's enlistment.[63] The regulation goes on to detail how *VA* is to assess the impact of a voided enlistment on entitlement to benefits. The key provisions are subsections (a) and (b):

> ***(a) Enlistment not prohibited by statute***. Where an enlistment is voided by the service department for reasons other than those stated in paragraph (b) of this section, service is valid from the date of entry upon active duty to the date of voidance by the service department. Benefits may not be paid, however, unless the discharge is held

[58] Neither party has challenged the validity of 38 C.F.R. § 3.14, so we proceed on the basis that the regulation is valid.

[59] *Martinez*, 31 Vet.App. at 175.

[60] *Brown v. Gardner*, 513 U.S. 115, 120 (1994).

[61] *Id.*

[62] We will discuss § 3.14 in greater detail later in the next section. But it is necessary to explain here why § 3.14 does not support the position that VA is bound by the service department's voided enlistment finding for the purpose of establishing eligibility for VA benefits.

[63] 38 C.F.R. § 3.14 (a)-(d).

to have been under conditions other than dishonorable.

> **(b) Statutory prohibition**. Where an enlistment is voided by the service department because the person did not have legal capacity to contract for a reason other than minority (as in the case of an insane person) or because the enlistment was prohibited by statute (a deserter or person convicted of a felony), benefits may not be paid based on that service even though a disability was incurred during such service. An undesirable discharge by reason of the fraudulent enlistment voids the enlistment from the beginning.

Perhaps most significantly for our resolution of the appeal before us, subsections (a) and (b) make clear that voided enlistments can fall into one of two categories. One category (the one reflected in subsection (b)) is enlistments that are voided for reasons that categorically bar eligibility for benefits. The other category (under subsection (a)) concerns enlistments voided for reasons that do not categorically bar eligibility for VA benefits. While we highlight some of the specific regulatory language below, the central point, as an overall matter, is that VA is charged under § 3.14 with making an independent determination about the effects of a voided enlistment on a claimant's eligibility to obtain benefits—the Agency must determine whether a particular voided enlistment comes under subsection (a) or subsection (b).

Of course, VA is not entirely unconstrained by service department findings when assessing the impact of voided enlistments on the eligibility of a claimant to obtain VA benefits. The regulation makes this point clear as well. For example, both subsection (a) and subsection (b) begin with the phrase "[w]here an enlistment is voided by the service department. . . ."[64] And this language tracks the regulation's introductory sentence referring to an "enlistment [ ] voided by the service department."[65] These references make clear that it is the service department that determines whether an enlistment has been voided. VA is not at liberty to conclude otherwise. In addition, subsection (a), the part of the regulation that addresses situations in which a void enlistment does *not* categorically bar eligibility for benefits, states that "service is valid from the date of entry upon active duty to the date of voidance by the service department."[66] This language, on its face, requires VA to accept not only the service department's finding that an enlistment was voided but also the service member's date of entry, the date of voidance, and the date of release. In other words, the

---

[64] 38 C.F.R. § 3.14(a), (b).

[65] 38 C.F.R. § 3.14.

[66] 38 C.F.R. § 3.14(a).

11

regulation's plain terms require VA to accept the inputs necessary to determine the period of service underlying the voided enlistment—the start date and the end date of the applicable period. But it is equally true that VA may not unquestionably accept that a claimant who was subject to a voided enlistment is categorically barred from receiving VA benefits. Instead, after accepting the fact of voidance and the entry and separation dates, VA must apply the relevant regulation—§ 3.14—to determine how a particular voided enlistment affects a claimant's eligibility for VA benefits.[67]

As we discuss below, the Board, in the decision on appeal, did not proceed as we outlined thus far under § 3.14. That is, the Board did not (or at least did not clearly) decide whether appellant's voided enlistment came within subsection (a) or subsection (b). We'll return to the Board's discussion in a moment. We make the comment here to underscore that our decision today is a limited one because we are constrained by the Board's deficient discussion. So, we don't have occasion to say much about applying the various factors the regulation sets out to determine whether a particular voided enlistment categorically prevents eligibility for benefits under subsection (b) or whether such an enlistment comes within subsection (a). Again, the key is that subsection (a) clearly instructs that service can be valid despite a voided enlistment so long as the service department voided the enlistment "for reasons other than those stated in paragraph (b) of this section."[68] But given the inadequacies of the Board's discussion of the impact of appellant's voided enlistment, we leave for another day an exploration of the intricacies of subsections (a) and (b) of § 3.14.

As we said, if VA determines that a claimant's voided enlistment comes within subsection § 3.14(b), the analysis is complete. Such a claimant is not eligible to receive VA benefits under the unambiguous language of the regulation. In contrast, and also under the unambiguous language of the regulation, if a claimant's voided enlistment comes under § 3.14(a), a claimant may be eligible for benefits. So, in the subsection (a) context, VA has more work to do. The next step for VA to take when it determines a voided enlistment comes under subsection (a) is reflected in the subsection's limitation that "benefits may not be paid, however, unless the discharge is held to have

---

[67] As we will discuss, if VA determines that a particular voided enlistment falls within § 3.14 (a), VA's analysis is not finished. VA must then move on to the next step of characterizing that period of service under 38 C.F.R. § 3.12.

[68] 38 C.F.R. § 3.14(a).

been under conditions other than dishonorable." [69] The import of all of this is that VA must assess *first* whether a particular voided enlistment falls within § 3.14(a) or § 3.14(b). And *only* if such a voided enlistment falls within subsection (a) does VA move on to the next step and decide about the character of service during the voided enlistment period. If VA reaches this step, it will typically face an uncharacterized discharge because the service department will likely not have characterized the period of service underlying a void enlistment.[70] And when VA faces a voided enlistment coming within § 3.14(a) and the service department has not characterized the period of service underlying the voided enlistment, VA should turn to 38 C.F.R. § 3.12, entitled "[c]haracter of discharge," and apply the relevant criteria to characterize the voided period of service. In such cases, VA should proceed as it would whenever it assesses a claimant's character of discharge.[71]

Regulations, like statutes, must be considered as a whole.[72] And regulations, like statutes, derive their meaning from the context of the surrounding regulatory scheme.[73] Our reading of § 3.14 follows both the fundamental principles of regulatory interpretation and VA's regulatory scheme. To that end, 38 C.F.R. § 3.14 has one purpose: to permit VA to award benefits in certain situations despite an enlistment being voided by the service department. And when read along with § 3.12, it follows that VA must independently assess the facts of a voided enlistment and whether they fall into §§ 3.14(a) or (b) before addressing whether the character of discharge bars benefits.

---

[69] *Id.*

[70] *See* R. at 248 (Appellant's DD-214 reflecting a "not applicable" character of service). In 1984, VA amended 38 C.F.R. § 3.12 in response to the Department of Defense (DOD) creating new categories of administrative separation that do not include a characterization of the individual's service. 49 Fed. Reg. 44,099 (1984); *see* § 3.12(k) (2023). In its rulemaking, VA explained that since the DOD is no longer required to characterize service in certain circumstances, the Agency intended to provide a uniform rule for determination of veteran status. 49 Fed. Reg. 44,099. VA then issued a rule requiring its adjudicators to ascertain "veteran status" based on the facts and circumstances of service. *Id.* Although § 3.12 was amended effective October 1, 1982, the facts of appellant's pre-amendment, uncharacterized separation appear to implicate the exact scenario contemplated by VA. Moreover, we know that starting before appellant's separation, the Army will always put a "zero" in block 12c of a DD-214 for the days served when it voids an enlistment. *See* AR 635-5, ch. 2-7(d)(2); AR 635-200, ch. 5-21; AR 635-200, ch. 14-4. In other words, if a service department follows the rule about putting a zero in block 12c, there will never be a period of service that could be subject to characterization.

[71] *See* 38 C.F.R. § 3.12(d).

[72] *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455, (1993) (quoting *United States v. Heirs of Boisdore*, 49 U.S. (8 How.) 113, 122, 12 L. Ed. 1009 (1849)); *Ortiz-Valles v. McDonald*, 28 Vet.App. 65, 70 (2016); *Gazelle v. McDonald*, 27 Vet.App. 461, 464 (2016) ("[S]tatutes must be considered as a whole and in the context of the surrounding statutory scheme").

[73] *Gazelle*, 27 Vet.App. at 464.

To recap: 38 C.F.R. § 3.14 sets out a clear order of operations when VA faces a voided enlistment. VA must apply § 3.14 to determine whether the facts leading to a voided enlistment fall within subsection (a) or subsection (b). Should VA determine that the facts fall within subsection (b) because the enlistment was voided as a result of certain statutory prohibitions, its assessment ends there because under the regulation benefits may not be paid when (b) applies.[74] However, should the facts leading to the void enlistment fall under subsection (a) (because facts leading to the voided enlistment do not fall under (b)), then the voided enlistment is not a categorical bar to benefits and VA must move on to the next step—characterizing the period of service, which would likely require VA to consider the applicable provisions of 38 C.F.R. § 3.12.[75]

### C. Assessing the Board's July 15, 2021, Decision

We turn now to the July 15, 2021, Board decision on appeal. Appellant argues that the Board erred by failing to adequately apply 38 C.F.R. §§ 3.14(a) and (b) when finding that his prior convictions would have prevented his enlistment and thus barred eligibility for VA benefits as a matter of law.[76] Appellant also argues that the Board erred by failing to adequately explain why it found his characterization of discharge "undesirable" when his DD-214 shows he had an uncharacterized period of service.[77] We conclude that the Board's statement of reasons or bases is inadequate given the legal principles we have described specifying how VA must assess eligibility for benefits in the context of a voided enlistment. Most significantly, the Board's consideration of the voided enlistment issue appears to elide the distinction between the question § 3.14 considers (whether the voided enlistment categorically bars benefits or whether it does not) and the question under § 3.12 (what is the character of service). The result is that the Board's discussion does not facilitate meaningful judicial review because we can't tell if the Board employed the correct legal principles.

In fact, the Board's discussion strongly suggests that the Board did not understand how it was to assess eligibility for benefits in a voided enlistment situation. To start, the Board does not engage in any analysis (or at least no reasoned analysis) about whether the facts of appellant's

---

[74] 38 C.F.R. § 3.14(a).

[75] *Id.* ("Benefits may not be paid, however, unless the discharge is held to have been under conditions other than dishonorable.").

[76] Appellant's Br. at 14-23.

[77] *Id.*

voided enlistment come within § 3.14(a) or § 3.14(b). This omission is highly significant because, as we discussed above, placement of voided enlistment into either subsection (a) or subsection (b) is the *first* thing VA must do because answering that question sets the stage for whether a claimant is categorically barred from receiving benefits based on a voided enlistment. But there is more confusion in the Board's reasoning. For example, the Board found that an "undesirable discharge by reason of fraudulent enlistment voids the enlistment from the beginning[,]" citing 38 C.F.R. § 3.14(b).[78] While this statement looks like it could be directed at categorizing a voided enlistment in either subsection (a) or subsection (b), we can't be sure. After all, the Board discusses an "undesirable discharge," but that term refers to a character of discharge determination[79]— something we know the Army did not do here because it recorded an uncharacterized separation.[80] The Board then states that, because appellant's service was properly voided, his separation was under the equivalent to being discharged under dishonorable conditions.[81] However, no law supports the finding that a void enlistment is equivalent to a dishonorable discharge or that the character of discharge turns on the facts of a void enlistment in the way the Board reasons. As we discussed, the effect of a void enlistment on eligibility for VA benefits is distinct from an inquiry into whether a character of discharge bars benefits. While the Board cited subsection (b) in this part of its decision, one only proceeds to consider character of discharge issues after concluding that the voided enlistment comes within § 3.14(a).

These significant deficiencies in the Board's discussion are enough to require remand. But we will exercise our discretion to highlight certain additional issues for the benefit of the Board on remand.[82] First, the Board recognized that appellant had been convicted of crimes and stated that these convictions would have prevented his enlistment.[83] But the Board does not explain why it reached this conclusion. In this regard, we note that neither § 3.14(a) nor § 3.14(b) discusses convictions of a crime generally. Subsection (a) says nothing about convictions at all and, perhaps

---

[78] R. at 5.

[79] *See Cranford v. McDonough*, 55 F.4th 1325, 1328-29 (Fed. Cir. 2022).

[80] R. at 248.

[81] R. at 8, 10.

[82] *See Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009).

[83] R. at 8, 11.

more importantly, subsection (b) refers only to a conviction for a felony.[84] And here, it appears that appellant's convictions were treated as misdemeanors.[85] We need not definitively resolve that factual issue—although the parties appear to accept that the conditions are misdemeanors.[86] The point is that the Board did not explain how appellant's concealed convictions, including how the classification of those convictions as either misdemeanors or felonies, played into the analysis under § 3.14. The Board must attend to this issue on remand.

In addition, the Board's discussion of § 3.12(k)(2) is perplexing. That regulation states that when VA is confronted with an uncharacterized separation, "a void enlistment or induction may be a bar to VA benefits depending on the facts and circumstances surrounding the separation."[87] To begin with, as we've noted above, it is not clear how the Board reached § 3.12 to consider whether it needed to characterize an uncharacterized period of service. Plus, the Board did not, in fact, address whether the facts and circumstances of appellant's uncharacterized service are a bar to benefits, something it would have to do under the regulatory provision the Board cited.[88] But even if we turned a blind eye to these questions, we don't understand why the Board referred to § 3.12(k)(2) at all. By its own terms, § 3.12(k) applies only to those separations occurring on or after October 1, 1982.[89] Appellant's separation from service occurred in April 1980.[90] On remand, should the Board again rely on § 3.12(k)(2) it must explain why it is doing so given the date of appellant's separation (and, of course, otherwise provide an adequate statement of its reasons or bases if it concludes the regulation provides guidance).

In sum, remand is warranted for the Board to conduct an independent analysis of the effect of appellant's void enlistment on his eligibility for VA benefits under 38 C.F.R. § 3.14. Should the Board find that the facts of appellant's voided enlistment come within 38 C.F.R. § 3.14(b), then it can end its analysis there. But if the Board determines that appellant can attain veteran status despite the void enlistment because 38 C.F.R. § 3.14(b) does not apply (i.e., the voided enlistment

---

[84] 38 C.F.R. § 3.14(b).

[85] *See* R. 436 (FBI report detailing that appellant served 12 total days in jail for both convictions).

[86] *See* Appellant's Br. at 18; *see generally* Secretary's Br. at 19-22 (arguing that the distinction between felony and misdemeanor is irrelevant, but not contesting appellant's characterization of the convictions as misdemeanors).

[87] R. at 7-8.

[88] R. at 5-11.

[89] 38 C.F.R. § 3.12(k).

[90] R. at 248.

falls under subsection (a)), then it must move on to characterizing that period of service under the relevant portions of 38 C.F.R. § 3.12.

Given this disposition, the Court will not now address the remaining arguments and issues raised by the appellant.[91] On remand, the appellant is free to submit additional evidence and argument on the remanded matter, including the specific arguments raised here on appeal, and the Board must consider any such relevant evidence and argument.[92] The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the decision," and the Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112.[93]

### III. CONCLUSION

For the foregoing reasons, we SET ASIDE the Board's July 15, 2021, decision and REMAND this matter for further proceedings in accord with this opinion.

---

[91] *See Quirin*, 22 Vet.App. at 395 ("[T]he Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion."); *Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order) (same).

[92] *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order).

[93] *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991).